**CASE NO. 21-2207**

=====================================================

**IN THE**

**United States Court of Appeals**

**FOR THE FOURTH CIRCUIT**

————————————————

JODY ROSE,

Administratrix of the Estate of Kyree Devon Holman

*Plaintiff - Appellant,*

v.

PSA AIRLINES, INC., PSA AIRLINES, INC. GROUP BENEFIT PLAN, UMR, INC., QUANTUM HEALTH, INC. *a/k/a* MyQHealth By Quantum, AND MCMC, LLC;

*Defendants - Appellees.*

————————————————

On Appeal from the United States District Court for the Western District of North Carolina at Charlotte – Case No. 3:19-cv-00695-GCM-DCK

————————————————

**DEFENDANTS-APPELLEES' RESPONSE BRIEF**

Edward J. Meehan
Ross P. McSweeney
Groom Law Group, Chartered
1701 Pennsylvania Ave, N.W.
Washington, D.C. 20006
(202) 857-0620
emeehan@groom.com
rmcsweeney@groom.com
*Attorneys for PSA Defendants*

Brian D. Boone
Brandon C.E. Springer
Alston & Bird LLP
Bank of America Plaza
Suite 4000
101 South Tryon Street
Charlotte, NC 28280-4000
(704) 444-1000
brian.boone@alston.com
brandon.springer@alston.com
*Attorneys for UMR, Inc.*

Rachel Ann Smoot
Taft Stettinius & Hollister, LLP
Suite 1000
65 East State Street
Columbus, OH 43215
(614) 221-2838
rsmoot@taftlaw.com
*Attorney for Quantum Health, Inc.*

Victoria Therese Kepes
Alfred Victor Rawl, Jr.
Gordon Rees Scully Mansukhani LLP
Suite 350
40 Calhoun Street
Charleston, SC 29401
(843) 278-5900
vkepes@grsm.com
vrawl@grsm.com
*Attorneys for MCMC, LLC*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-2207__        Caption: __Jody Rose v. PSA Airlines, Inc. Group Insurance Plans, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__MCMC, LLC__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☑ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      MCMC is an indirect subsidiary of Sedgwick Claims Management Services, Inc., which is a private corporation owned by Sedgwick Holdings, Inc. and Lightning Cayman Merger Sub, Ltd. ("the Entities"). The Entities ultimate parent company is Sedgwick, L.P. Sedgwick, L.P.'s ultimate majority shareholder is The Carlyle Group ("Carlyle"). Stone Point Capital, Onex Corporation, La Caisse de dépôt et placement du Québec (CDPQ) and certain management investors are minority shareholders. Carlyle is a New York investment firm that is publicly traded on the New York Stock Exchange under the symbol CG. Onex Corporation is publicly traded on Toronto Stock Exchange under the symbol ONEX.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                   ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                ☐ YES ☑ NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐ YES ☑ NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: _s/Victoria T. Kepes_____    Date: ___November 8, 2021___

Counsel for: _MCMC, LLC_____

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-2207__      Caption: __Jody Rose v. PSA Airlines, Inc. et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Quantum Health, Inc.__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

       Quantum Holdco, Inc.



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?          ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: ___/s/ Michael K. Robertson /s/___     Date: ___11/5/2021___

Counsel for: ___Quantum Health, Inc.___

**Print to PDF for Filing**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 21-2207          Caption: Jody Rose v. PSA Airlines, Inc. Group Ins. Plan, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

PSA Airlines, Inc. and PSA Airlines, Inc. Group Benefit Plan
(name of party/amicus)


who is _____ appellees _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☑YES ☐NO


2.     Does party/amicus have any parent corporations?                              ☑YES ☐NO
       If yes, identify all parent corporations, including all generations of parent corporations:

       PSA Airlines, Inc., is a wholly owned subsidiary of American Airlines Group, Inc.


3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐YES ☑NO
       If yes, identify all such owners:

       No publicly held corporation or other publicly held entity owns more than 10% of the stock of
       PSA Airlines, Inc.'s parent company, American Airlines Group, Inc.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☑YES ☐NO
      If yes, identify entity and nature of interest:

      Other subsidiaries of American Airlines include American Airlines, Inc. Americas Ground
      Services, Inc. Avion Assurance, Ltd. (Bermuda) AAG Private Placement-1 Parent LLC PMA
      Investment Subsidiary, Inc. Envoy Aviation Group Inc. Piedmont Airlines, Inc. (MD) FLAAG
      2017-1 OPP LLC.

5.    Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Ross P. McSweeney                    Date:        11/08/2021

Counsel for: Appellees PSA Airlines, Inc. and PS

- 2 -

[Print to PDF for Filing]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-2207__         Caption: __Rose v. PSA Airlines, Inc., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__UMR, Inc.__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      United HealthCare Services, Inc. (parent); UnitedHealth Group Incorporated (grandparent)


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☑ YES ☐ NO
      If yes, identify all such owners:
      UMR, Inc. is a wholly-owned subsidiary of United HealthCare Services, Inc.
      United HealthCare Services, Inc. is a wholly-owned subsidiary of UnitedHealth Group Incorporated.
      UnitedHealth Group Incorporated is a publicly-owned company.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Brian D. Boone          Date:   11/8/2021

Counsel for: UMR, Inc.

- 2 -

[Print to PDF for Filing]    [Reset Form]

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................. 1

STATEMENT OF ISSUES PRESENTED ............................................... 3

STANDARD OF REVIEW .................................................................. 4

STATEMENT OF THE CASE .............................................................. 5

SUMMARY OF ARGUMENT .............................................................. 9

ARGUMENT .................................................................................. 11

   I.  The District Court properly dismissed Rose's claims under ERISA § 502(a)(1)(B). ...................................................................... 11

     a. Section 502(a)(1)(B) does not allow recovery of the monetary value of a benefit never received. ..................................... 12

        1.  Every circuit court to consider the issue has rejected Rose's argument. ...................................................... 14

        2.  Rose cannot seek a declaration to recover benefits. ................. 20

        3.  No amount of fact finding could change the result. .................. 21

     b. The non-PSA Defendants are not proper defendants under § 502(a)(1)(B). ................................................................ 22

     c. MCMC cannot be liable under § 502(a)(1)(B) because Rose never alleges that MCMC denied any claim for benefits. ............................. 24

   II. The District Court properly dismissed Rose's § 502(a)(3) claims... 24

     a. Through her claim for surcharge, Rose sought "compensatory damages," not equitable relief. ............................................. 25

i

b. Rose does not qualify for other forms of equitable relief under § 502(a)(3). ..........................................................30

c. Section 502(a)(3) does not authorize benefit claims by another name. ................................................................33

d. Rose cannot obtain § 502(a)(3) relief from the non-PSA Defendants. ........................................................39

e. Rose has not plausibly alleged that MCMC, UMR, or Quantum were fiduciaries or breached any alleged fiduciary duty. ................41

1. Rose failed to allege that MCMC, UMR, or Quantum were fiduciaries for the challenged conduct. .....................................41

2. Rose failed to allege that MCMC, UMR, or Quantum breached any duty. ...................................................46

CONCLUSION ...............................................47

CERTIFICATE OF COMPLIANCE .......................................49

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ................................................................... Passim

*Archer v. SunTrust Bank*,
   2017 WL 6550390 (E.D. Va. Dec. 22, 2017) ......................................... 37

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................ 47

*Bagwell v. Dimon*,
   No. 1:14-cv-495, 2015 WL 2374614 (M.D.N.C. May 18, 2015) .............. 4

*Bast v. Prudential Insurance Company of America*,
   150 F.3d 1003 (9th Cir. 1998) ............................................................. 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 4, 47

*Brown v. J.B. Hunt Transp. Servs., Inc.*,
   586 F.3d 1079 (8th Cir. 2009) ............................................................. 23

*Campbell v. Rite Aid Corp.*,
   2014 WL 3868008 (D.S.C. Aug. 5, 2014) ........................................ 37, 40

*Cannon v. Group Health Services of Oklahoma, Inc.*,
   77 F.3d 1270 (10th Cir. 1996) ................................................ 17, 18, 20

*Chavis v. Plumbers & Steamfitters Local 486 Pension Plan*,
   2018 WL 4052182 (D. Md. Aug. 23, 2018) ......................................... 37

*Christine S. v. Blue Cross Blue Shield of New Mexico*,
   428 F. Supp. 3d 1209 (D. Utah 2019) ................................................ 39

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011) ................................................................. 27, 28, 32

*Coleman v. Nationwide Life Ins. Co.*,
  969 F.2d 54 (4th Cir. 1992)......................................46

*ConFold Pac., Inc. v. Polaris Indus., Inc.*,
  433 F.3d 952 (7th Cir. 2006)..................................33

*Coyne & Delany Co. v. Blue Cross & Blue Shield*,
  102 F.3d 712 (4th Cir. 1996)..................................35

*Custer v. Sweeney*,
  89 F.3d 1156 (4th Cir. 1996)..................................43

*Durham v. Health Net*,
  1995 WL 429252 (N.D. Cal. June 22, 1995).........................18

*Erwin v. Texas Health Choice, L.C.*,
  187 F. Supp. 2d 661 (N.D. Tex. 2002) ...........................15, 16

*Estate of Coggins v. Wagner Hopkins, Inc.*,
  183 F. Supp. 2d 1126 (W.D. Wis. 2001)..........................18

*Estate of Spinner v. Anthem Health Plans of Va., Inc.*,
  388 F. App'x 275 (4th Cir. 2010) .............................35

*Gluth v. Wal-Mart Stores, Inc.*,
  117 F.3d 1413, 1997 WL 368625 (4th Cir. July 3, 1997).....................24

*Gómez-González v. Rural Opportunities, Inc.*,
  626 F.3d 654 (1st Cir. 2010) ...............................23

*Gordon v. CIGNA Corp.*,
  890 F.3d 463 (4th Cir. 2018)..................................46

*Graden v. Conexant Sys. Inc.*,
  496 F.3d 291 (3d Cir. 2007) .................................23

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002).......................................Passim

*Hamann v. Indep. Blue Cross*,
  543 F. App'x 355 (5th Cir. 2013) .....................10, 15, 16, 21

iv

*Hammann v. AmeriHealth Adm'rs, Inc.*,
  2013 WL 663760 (E.D. La. Feb. 25, 2013) ...........................................15

*Harrow v. Prudential Ins. Co. of Am.*,
  279 F.3d 244 (3d Cir. 2002) ...................................................................20

*HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*,
  101 F.3d 1005 (4th Cir. 1996)................................................................46

*Heckman v. United Healthcare Ins. Co.*,
  2020 WL 4041081 (M.D. Fla. July 17, 2020) .......................................21

*Herzfeld v. Teva Pharm. USA, Inc. Omnibus Welfare Plan*,
  2019 WL 8647729 (C.D. Cal. Aug. 26, 2019) .......................................45

*Kenseth v. Dean Health Plan, Inc.*,
  722 F.3d 869 (7th Cir. 2013)..................................................................32

*Korotynska v. Metro. Life Ins. Co.*,
  474 F.3d 101 (4th Cir. 2006)......................................................19, 35, 36

*Kuestner v. Health & Welfare Fund & Pension Fund*
  *of the Phil. Bakery Emplrs. & Food Driver Salesmen's*
  *Union Local No. 463*,
  972 F. Supp. 905 (E.D. Pa. 1997) ..........................................................19

*Lasheen v. Loomis Co.*,
  2013 WL 1178209 (E.D. Cal. Mar. 21, 2013) .......................................16

*Leach v. Aetna Life Ins. Co.*,
  2014 WL 470064 (D. Md. Feb. 5, 2014)................................................37

*Liu v. SEC*,
  140 S. Ct. 1936 (2020)...........................................................................32

*Martin v. Duffy*,
  858 F.3d 239 (4th Cir. 2017)..................................................................34

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)..........................................................................Passim

*McCravy v. Metro Life Insurance Co.,*
  690 F.3d 176 (4th Cir. 2012) ........................................................29, 30

*McMahan v. Int'l Ass'n of Bridge,*
  964 F.2d 1462 (4th Cir. 1992) ....................................................5, 7, 36

*Md. Shall Issue v. Hogan,*
  963 F.3d 356 (4th Cir. 2020) ...................................................................4

*Mertens v. Hewitt Assocs.,*
  508 U.S. 248 (1993) ......................................................................Passim

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus.*
  *Health Ben. Plan,*
  577 U.S. 136 (2016) .........................................................28, 31, 37, 41

*Moon v. BMX Techs, Inc.,*
  577 F. App'x 224, 229 (4th Cir. 2014) ................................................43

*Moyle v. Liberty Mutual Retirement Benefit Plan,*
  823 F.3d 948 (9th Cir. 2016) ................................................................38

*Nachman Corp. v. Pension Benefit Guar. Corp.,*
  446 U.S. 359 (1980) ................................................................................9

*Pegram v. Herdrich,*
  530 U.S. 211 (2000) .................................................................43, 45, 47

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.,*
  712 F.3d 705 (2d Cir. 2013) .................................................................47

*Peters v. Aetna, Inc.,*
  2 F.4th 199 (4th Cir. 2021) ..........................................................20, 30

*Pilot Life Ins. Co. v. Dedeaux,*
  481 U.S. 41 (1987) ..................................................................................1

*Powell v. Chesapeake & Potomac Tel. Co. of Va.,*
  780 F.2d 419 (4th Cir. 1985) ...............................................................31

*Prince v. Sears Holdings Corp.,*
   848 F.3d 173 (4th Cir. 2017) ................................................................13

*Rochow v. Life Insurance Co. of North America,*
   780 F.3d 364 (6th Cir. 2015) ........................................................37, 38

*Savani v. Wash. Safety Mgmt. Sols., LLC,*
   474 F. App'x 310 (4th Cir. 2012) ................................................35, 37

*SD3, LLC v. Black & Decker (U.S.) Inc.,*
   801 F.3d 412 (4th Cir. 2015) ..........................................................4, 44

*Sereboff v. Mid-Atlantic Med. Serv.,*
   547 U.S. 356 (2006) ..............................................................................41

*Silva v. Metropolitan Life Insurance Co.,*
   762 F.3d 711 (8th Cir. 2014) ................................................................38

*Skinner v. Northrop Grumman Ret. Plan B,*
   673 F.3d 1162 (9th Cir. 2012) ..............................................................28

*Spinedex Physical Therapy USA Inc. v. United Healthcare*
   *of Ariz., Inc.,*
   770 F.3d 1282 (9th Cir. 2014) ..............................................................24

*Thorn v. Jefferson-Pilot Life Ins.,*
   445 F.3d 311 (4th Cir. 2006) ................................................................41

*Tony M. v. United Healthcare Ins. Co.,*
   2019 WL 5066806 (D. Utah Oct. 9, 2019) ..........................................21

*United States v. Benton,*
   523 F.3d 424 (4th Cir. 2008) ................................................................34

*Varity Corp. v. Howe,*
   516 U.S. 489 (1996) ......................................................34, 35, 36, 37

*Zavala v. Trans-Sys., Inc.,*
   258 F. App'x 155 (9th Cir. 2007) ..........................................17, 29, 30

*Zavala v. Trans-System, Inc.*,
  2006 WL 898019 (D. Or. Apr. 4, 2006) .........................................Passim

**Statutes**

29 U.S.C. § 1002(21)(A) ........................................................43, 47

29 U.S.C. § 1132(a)(1)(B)..................................................12, 19, 22

**Rules**

Fed. R. App. P. 32(f)...............................................................50

**Regulations**

29 C.F.R. § 2509.75-8..............................................................46

29 C.F.R. § 2590.715-2719(d)(3)(i)(A) .....................................13

45 C.F.R. § 147.136................................................................44

45 C.F.R. §§ 147.136(a)(2)(ii)(B)............................................44

45 C.F.R. §§ 147.136(a)(2)(vii)(c–d) .......................................44

45 C.F.R. § 147.136(d)(3).................................................45, 48

**Other Authorities**

Decree against the trustee for the payment of money–Damages,
  Bogert's The Law of Trusts and Trustees § 862 (June 2021) .............28

Restatement (Third) of Restitution and Unjust Enrichment
  § 1 (Am. L. Inst. 2011) ........................................................33

## **INTRODUCTION**

The Supreme Court has held that ERISA's "carefully integrated civil enforcement provisions" (*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)) "were intended to be exclusive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Consistent with that teaching, the district court dismissed Appellant Jody Rose's claims under ERISA §§ 502(a)(1)(B) and 502(a)(3) because she sought relief unavailable under ERISA's carefully integrated provisions.

The district court was right on both counts. The court dismissed Rose's claims under § 502(a)(1)(B) because that provision does not permit a plaintiff to recover the monetary value of a medical procedure never received (rather than receiving the medical procedure itself or recovering costs paid for the medical procedure). J.A. 64–65; J.A. 84. As the district court explained, if a health plan denies coverage for a medical procedure, a participant has only two options "to seek those benefits": (1) pay "for the treatment and then [seek] reimbursement through a § 502(a)(1)(B) action," or (2) seek a "preliminary injunction." J.A. 65 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004)). Mr. Holman pursued neither remedy and Rose (the administratrix for Mr. Holman's estate)

1

cannot receive compensatory damages for the value of a heart transplant that Mr. Holman never received.

The court also correctly dismissed Rose's claims under § 502(a)(3) because they were "merely [claims] for compensatory damages and d[id] not constitute 'appropriate equitable relief' under § 502(a)(3)." J.A. 87. Although Rose used the language of "equitable" relief, she really sought "compensatory damages"—"the classic form of *legal* relief"—which are unavailable under § 502(a)(3). *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993).

This Court should affirm the dismissal for the same reasons. Because it ruled as it did, the district court did not reach many of the Defendants' other arguments, but this Court may affirm for those other reasons. First, Rose cannot repackage her claim for benefits under § 502(a)(1)(B) as a claim for "equitable" monetary relief under § 502(a)(3). Second, UMR, Quantum, and MCMC cannot be liable on any of Rose's claims because (as she alleged) those entities were not responsible for paying benefits under Mr. Holman's plan and Rose did not allege that those entities held any property to which Mr. Holman's estate was entitled. Third, Rose makes no plausible factual allegations that UMR,

2

Quantum, or MCMC participated in the challenged conduct, let alone breached supposed fiduciary duties to Mr. Holman. And finally, neither Rose nor Mr. Holman's estate participates in his former health plan, so both lack Article III standing to seek injunctive or declaratory relief.

This Court should affirm the judgment below.

## STATEMENT OF ISSUES PRESENTED

1. Whether the district court correctly dismissed Rose's claims under § 502(a)(1)(B) because she sought the monetary value of medical benefits never received.

2. Whether the district court correctly dismissed Rose's § 502(a)(3) claims because she sought money damages under the guise of "equitable" relief.

3. Whether the district court correctly dismissed Rose's claims under 502(a)(3) because they were repackaged versions of her claims for benefits under § 502(a)(1)(B).

4. Whether the district court correctly dismissed Rose's claims against UMR, Quantum, and MCMC because, by Rose's own allegations, they were not responsible for paying benefits under Mr. Holman's plan and do not possess any funds or property that might belong to the estate.

5. Whether the district court correctly dismissed Rose's claims for injunctive and declaratory relief because neither she nor Mr. Holman's estate participates in his former health plan.

6. Whether the district court correctly dismissed Rose's claims against Quantum, UMR, and MCMC because Rose did not plausibly allege that they were fiduciaries or breached any claimed fiduciary duty.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal of an action under Rule 12(b)(6). *Md. Shall Issue v. Hogan*, 963 F.3d 356, 360 (4th Cir. 2020). The Court must determine whether the plaintiff alleged sufficient facts "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Rule 8 requires a plaintiff to "allege particular facts against a particular defendant," not "indeterminate assertions against all defendants." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (internal quotation marks and citation omitted); *see also Bagwell v. Dimon*, No. 1:14-cv-495, 2015 WL 2374614, at *7 (M.D.N.C. May 18, 2015) ("Under Rule 8(a), grouping multiple defendants together in a broad allegation is insufficient to provide the defendants with fair notice of the claims against them and the grounds for relief.") (citation omitted).

This Court "[has] the power to affirm a judgment for any reason appearing on the record, notwithstanding that the reason was not

addressed below." *McMahan v. Int'l Ass'n of Bridge*, 964 F.2d 1462, 1467 (4th Cir. 1992).

## STATEMENT OF THE CASE

1. Rose is the administratrix for Mr. Holman's estate and filed this lawsuit on the estate's behalf. *See* J.A. 12. She alleged that Mr. Holman began suffering "flu-like symptoms" in December 2018 (J.A. 15–16) that developed into acute heart failure. *See* J.A. 16. When his condition worsened, Mr. Holman was airlifted to Duke University Hospital. *Id.* Rose alleged that the Duke medical team determined that Mr. Holman was an appropriate candidate for a heart transplant. *See* J.A. 16–17.

According to the amended complaint, Duke chose to wait for preauthorization before proceeding with the transplant. J.A. 17. Rose alleged that in early January 2019, Duke submitted clinical information supporting Mr. Holman's claim for a heart transplant and that on January 17, 2019, "Defendants" (undifferentiated) determined that his plan did not cover the procedure. J.A. 17–18. On January 25, 2019, "Defendants" (again, undifferentiated) allegedly rejected Mr. Holman's

claim for reconsideration of his transplant claim (J.A. 19) and then denied an expedited internal appeal on January 31, 2019. J.A. 21.

Rose alleged that "Defendants" denied Holman's claim based on the InterQual Criteria, which provide that, for a heart transplant to qualify as medically necessary, a patient must have no history of drug or alcohol misuse or must have been drug-and-alcohol free for at least the previous six months. J.A. 22. On February 1, 2019, Duke allegedly sought expedited external review of the denial. *See* J.A. 23–24. Rose alleged that MCMC, the external reviewer, performed a standard review rather than an expedited review. *See* J.A. 24. On February 9, 2019, while his claim for external review was pending, Mr. Holman died. *See* J.A. 25. "On March 6, 2019, MCMC overturned the denial of [Mr. Holman]'s heart transplant." J.A. 26.

2.    As the administratrix for Mr. Holman's estate, Rose sued PSA, three PSA plan entities, PSA Airlines Shared Services Org., Quantum, MCMC, and UMR. J.A. 14–15. She sought monetary relief under §§ 502(a)(1)(B) and 502(a)(3) as well as injunctive and declaratory relief. J.A. 27–40. Although Rose described the relief that she sought in many ways, she specifically asked for "monetary damages" corresponding

to the value of the heart transplant that Mr. Holman never received, *i.e.* compensatory damages. *See, e.g.*, J.A. 40 (asking the court to "find[] that [Rose] is entitled to recover for [Holman's] healthcare benefits"); J.A. 41 (requesting an "[a]ward [of] monetary damages").

PSA, Quantum, MCMC, and UMR each moved to dismiss the Complaint. J.A. 42–44 (PSA); J.A. 45–47 (Quantum); J.A. 48–51 (UMR); J.A. 52–54 (MCMC). The district court referred those motions to a magistrate judge. J.A. 7–8.

The magistrate recommended dismissal of Rose's § 502(a)(1)(B) claims, concluding that § 502(a)(1)(B) does not permit claims for compensatory damages because its remedies are exclusive and "only Congress has the power to remedy" Rose's claimed harm "by amending the statute." J.A. 69. The magistrate judge also concluded that Rose's request for injunctive and declaratory relief under § 502(a)(3) was moot because Mr. Holman could no longer benefit from any prospective relief. J.A. 74. But the magistrate judge recommended against dismissal of Rose's § 502(a)(3) claims for monetary relief, reasoning that Rose might recover the value of the heart transplant as an equitable "surcharge" instead of damages. *Id.*

7

Rose objected to the magistrate judge's recommendation on her § 502(a)(1)(B) claims, and each Defendant objected to the magistrate judge's recommendation on Rose's § 502(a)(3) claims. Rose did not object the to the magistrate judge's recommendation that her § 502(a)(3) claims for injunctive and declaratory relief be dismissed as moot. *See generally* Plaintiff's Objections to the Magistrate Judge's Memorandum & Recommendation, Dkt. 68, No. 3:19-cv-695 (W.D.N.C. Apr. 8, 2021).

The district court reviewed de novo the magistrate judge's recommendations. The district court adopted the recommendation to dismiss Rose's § 502(a)(1)(B) claims (J.A. 84) but also dismissed Rose's § 502(a)(3) claims because she was seeking "a monetary windfall that, in reality, could have never come to pass." J.A. 87. The court held that "under no circumstances would [Mr. Holman] have received the monetary value of [the medical] treatment" and that awarding Rose "the monetary value of medical treatment that Mr. Holman did not receive— and cannot now receive—is not the type of 'make whole relief' authorized under the equitable remedy of surcharge." *Id.* The district court correctly held that, regardless of whether the Defendants acted as fiduciaries, the relief that Rose sought was unavailable because her claims were "merely

[claims] for compensatory damages and [do] not constitute 'appropriate equitable relief' under § 502(a)(3)." *Id.*

This appeal followed.

## SUMMARY OF ARGUMENT

This case involves sad facts, but the legal issues and result are straightforward. ERISA is a "comprehensive and reticulated statute[.]" *Mertens*, 508 U.S. at 251 (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980)). The statute's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* at 254 (quoting *Russell*, 473 U.S. at 146–47). The district court recognized as much: "[I]t is not for this Court to fashion a remedy under ERISA for these particular circumstances, rather that is the job of Congress." J.A. 88. While tragic, Mr. Holman's death does not change ERISA's remedial scheme. This Court should affirm for multiple reasons.

*First,* the district court correctly dismissed Rose's § 502(a)(1)(B) claims. In *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004), the Supreme Court held that a participant seeking the provision of wrongfully denied

9

benefits has two options: (1) paying "for the treatment [himself] and then [seeking] reimbursement through a § 502(a)(1)(B) action," or (2) seeking "a preliminary injunction." *Id.* at 211. Before his death, Mr. Holman did neither and § 502(a)(1)(B) does not entitle participants or their beneficiaries to "recover benefits they did not, and now cannot, receive." *Hamann v. Indep. Blue Cross*, 543 F. App'x 355, 357–58 (5th Cir. 2013).

Even if § 502(a)(1)(B) permitted recovery of the value of benefits never received—it does not—no relief was available from UMR, Quantum, or MCMC. As Rose alleged, PSA alone funded Mr. Holman's plan and was solely responsible for paying any benefits under the plan, so Rose cannot recover benefits from UMR, Quantum, or MCMC (even more so for MCMC because it *approved* the benefits claim).

*Second*, the district court also correctly dismissed Rose's § 502(a)(3) claims. A plaintiff cannot circumvent § 502(a)(1)(B)'s limitations by seeking benefits under § 502(a)(3) and calling them "equitable" relief or "surcharge." But that is precisely what Rose tries to do. The district court looked past the labels to see that Rose sought compensatory damages— "the classic form of *legal* relief." *Mertens*, 508 U.S. at 255. Legal relief is unavailable under § 502(a)(3).

Even if Rose had a cognizable claim under § 502(a)(3)—she did not—no relief is available from UMR, Quantum, or MCMC on that claim. Rose did not allege that UMR, Quantum, or MCMC profited or gained anything from the allegedly withheld benefits, so Rose cannot recover equitable relief from them under § 502(a)(3). Rose also failed to plausibly allege that UMR, Quantum, or MCMC served a fiduciary function for the challenged conduct or breached any claimed fiduciary duties.

The district court also correctly ruled that Rose lacked standing to sue for injunctive or declaratory relief. Given Mr. Holman's death, neither he nor his estate could benefit from any prospective relief.

## ARGUMENT

## I.   THE DISTRICT COURT PROPERLY DISMISSED ROSE'S CLAIMS UNDER § 502(A)(1)(B).

Rose alleged that "Defendants" wrongfully withheld health benefits due under the PSA plan and that, as a result, she was entitled to "the full value of the heart transplant and any related services, as well as all other associated benefits to which [Holman] would have been entitled had he lived." J.A. 27, 31. Both the magistrate judge and the district court recognized that, under Supreme Court precedent, § 502(a)(1)(B) does not

11

permit claims for the monetary value of benefits never received. *See* J.A. 64–65 (citing *Davila*, 542 U.S. at 211 and *Russell*, 473 U.S. at 146–47); J.A. 84.

This Court should affirm that dismissal.

### a. Section 502(a)(1)(B) does not allow recovery of the monetary value of a benefit never received.

The district court correctly recognized that a plaintiff cannot recover the monetary value of medical services never received under § 502(a)(1)(B).

Section 502(a)(1)(B) authorizes a participant or beneficiary of an ERISA-governed plan to seek "benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(1)(B)'s civil remedies provisions are comprehensive and exclusive. *Russell*, 473 U.S. at 146–47. "Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly" (*id.* at 146), so as the Supreme Court and this Court have held, compensatory or punitive damages are unavailable under § 502(a)(1)(B). *Id.* at 144; *see also Prince v. Sears*

12

*Holdings Corp.*, 848 F.3d 173, 178 (4th Cir. 2017) ("ERISA does not permit recovery of money damages[.]").

As the Supreme Court held in *Davila*, § 502(a)(1)(B) gives a participant or beneficiary who believes benefits were wrongfully denied two options: (1) seek a preliminary injunction compelling the plan to provide the benefit, or (2) pay for the benefit and then seek reimbursement from the plan. *Davila*, 542 U.S. at 211. Mr. Holman did neither.[1] Rose is now trying to expand § 502(a)(1)(B) to allow for the

---

[1] Rose never mentions *Davila* but worries that its holding that ERISA provides participants only two options when benefits are denied—sue for injunctive relief or pay first then seek reimbursement—encourages plan administrators to delay benefits decisions in the hopes that the patient dies before they can follow through with one of these options. *See* Brief of Appellant Jody Rose ("Rose's Br."), Dkt. 38 at 40–41. But as PSA explained in its briefing below (Dkt. 72 at 7, No. 3:19-cv-695 (W.D.N.C. Apr. 8, 2021)), regulations implementing the Affordable Care Act allow participants to seek immediate, expedited, and independent external review of an adverse benefit determination involving a life-or-death condition, rather than exhaust internal reviews. 29 C.F.R. § 2590.715-2719(d)(3)(i)(A). Rose has not alleged that Mr. Holman took advantage of that process or was unable to do so. Rose's Br. at 5. Instead, Mr. Holman first sought *internal* reconsideration of the determination, which confirmed the initial denial on January 25 (Rose's Br. at 5), followed by an expedited *internal* appeal, which concluded on January 31. Rose's Br. at 7. Only on February 1, 2019—15 days after he was empowered to do

13

recovery of the monetary value of benefits never received. The district court correctly rejected Rose's bid to fashion extratextual remedies under § 502(a)(1)(B)—and so has every circuit court to consider the issue.

### 1. Every circuit court to consider the issue has rejected Rose's argument.

Rose argues that out-of-circuit case law supports the recovery of the monetary value of benefits never received under § 502(a)(1)(B). *See* Rose's Br. at 27–32. Not so. The Fifth and Ninth Circuits, along with several district courts, have rejected this exact theory—both before and after *Davila*. And there is no authority—outside a Texas district court decision later rejected by the Fifth Circuit—supporting Rose's position.

In a case much like Rose's, the Fifth Circuit affirmed dismissal of a § 502(a)(1)(B) claim because the statute "does not provide that beneficiaries can recover benefits they did not, and now cannot, receive." *Hamann*, 543 F. App'x at 357. In *Hamann*, a plan participant died of leukemia while awaiting a coverage determination for an experimental

---

so—did Mr. Holman seek an expedited external review. Rose's Br. at 8. Congress has already resolved Rose's policy concerns.

treatment that was ultimately approved. *Hammann v. AmeriHealth Adm'rs, Inc.*, No. CIV.A. 12-2545, 2013 WL 663760, at *1 (E.D. La. Feb. 25, 2013), *aff'd sub nom. by Hamann v. Indep. Blue Cross*, 543 F. App'x 355 (5th Cir. 2013). His family sued for the monetary value of the alleged wrongfully denied benefits. *Id.* While the district court "sympathize[d] with the Plaintiffs' plight," it held that the "requested relief, the value of the benefits due to Mr. Hamann, is not recognized under the ERISA statutory scheme." *Id.* at *5. The court reasoned that it was for Congress, not the courts, to amend ERISA's remedial scheme. *Id.* ("[H]ad Congress intended for the value of benefits to be available to the decedents of a beneficiary, Congress would have specifically provided for that in the statute.").

The Fifth Circuit affirmed. *Hamann*, 543 F. App'x at 357. In doing so, it rejected the reasoning of *Erwin v. Texas Health Choice, L.C.*, 187 F. Supp. 2d 661 (N.D. Tex. 2002)—the primary case Rose relies on (*see* Rose's Br. 27–30). In *Erwin*, the district court construed § 502(a)(1)(B) to allow recovery of the full amount of benefits never received because holding otherwise "would provide an incentive for ERISA plan administrators to deny claims for expensive services." *Erwin*, 187 F.

Supp. 2d at 669. The *Erwin* court recognized that this interpretation might "result in [p]laintiff's recovery of a windfall," but found that outcome to be "more in line with the Congressional intent of ERISA." *Id.* at 669 n.4. The Fifth Circuit in *Hamann* rejected *Erwin*'s reasoning, holding that courts are "without power" to address the *Erwin* court's policy concerns "because [they] are bound by ERISA's terms which do not provide the relief the Plaintiffs seek." *Hamann*, 543 F. App'x at 357 n.3.[2]

The Ninth Circuit reached the same conclusion. In *Zavala v. Trans-System, Inc.*, a participant died from non-Hodgkin's lymphoma after his plan declined to cover a type of stem cell transplant. No. CIV. 05-6308-AA, 2006 WL 898019, at *1 (D. Or. Apr. 4, 2006), *aff'd*, 258 F. App'x 155 (9th Cir. 2007). His estate sought "restitution for the monetary value of the 'benefits unjustly accrued to [the] defendants by their denial of benefits for [the participant's] treatment." *Id.* at *5. As the Fifth Circuit did in *Hamann*, the Ninth Circuit held that § 502(a)(1)(B) did not

---

[2] Other than *Erwin*—which the Fifth Circuit rejected—the only case Rose offers for support never addressed whether ERISA permitted recovery of the monetary value of benefits never received. That case involved a default judgment in which the court did not address the scope of relief available under § 502(a)(1)(B). *Lasheen v. Loomis Co.*, No. 2:01-CV-0227-LKK-EFB, 2013 WL 1178209, at *6 (E.D. Cal. Mar. 21, 2013). The case is irrelevant.

16

authorize compensatory damages for benefits for not received. *Zavala v. Trans-Sys., Inc.*, 258 F. App'x 155, 158 (9th Cir. 2007).

The Ninth Circuit's earlier decision in *Bast v. Prudential Insurance Company of America*, 150 F.3d 1003 (9th Cir. 1998), *as amended* (Aug. 3, 1998), also supports the district court's holding. In *Bast*, the Ninth Circuit found that ERISA preempted state law claims related to a woman's death following her plan's denial of coverage and that the estate's claims for money damages were "extracontractual or compensatory damages which are not recoverable under ERISA." *Id.* at 1009. The court found that the "only possible remedy" that ERISA afforded was that the decedent "could have sought an injunction to compel [the plan administrator] to authorize the [desired] procedure when [the administrator] first denied coverage." *Id.* at 1010 n.1.

District courts in the Tenth Circuit and Seventh Circuit agree. In *Cannon v. Group Health Service of Oklahoma, Inc.*, a woman died of leukemia after her insurer denied preauthorization for a bone marrow transplant. 77 F.3d 1270, 1271 (10th Cir. 1996). The district court denied as futile the participant's husband's request to amend the complaint to seek the monetary value of the benefits never received, holding that a

17

plaintiff suing under § 502(a)(1)(B) could not "recover anything other than payment for medical expenses actually incurred, when that is the benefit provided by the plan." *Id.* at 1272; *see also id.* (There is "no legal authority for the proposition that a person may sue to recover the value of a service that would have been a benefit of the plan if the plan's terms had been satisfied."). The plaintiff did not appeal that holding, and the Tenth Circuit otherwise affirmed the district court. *See id.*

Likewise, in *Estate of Coggins v. Wagner Hopkins, Inc.*, a participant forwent treatment after the defendants allegedly denied benefits. 183 F. Supp. 2d 1126, 1132 (W.D. Wis. 2001). The court held that, in seeking the monetary value of those treatments under § 502(a)(1)(B) or § 502(a)(3), the participant's estate was "essentially asking the court to compensate it for the pain and suffering that [the decedent] endured" and "compensatory damages [] are not allowed under ERISA." *Id.*; *see also Durham v. Health Net*, No. C- 94-3575 MHP, 1995 WL 429252, at *2–3 (N.D. Cal. June 22, 1995), (candidate who was denied, and later became ineligible for, treatment could not seek the monetary value of the treatment), *aff'd,* 108 F.3d 337 (9th Cir. 1997); *Kuestner v. Health & Welfare Fund & Pension Fund of the Phil. Bakery*

18

*Emplrs. & Food Driver Salesmen's Union Local No. 463*, 972 F. Supp. 905, 910 (E.D. Pa. 1997) (plaintiff who requested "restitution" from her insurer for denying her claim could not seek the monetary value of those denied benefits).

Court after court has held that § 502(a)(1)(B) does not authorize the monetary relief that Rose seeks. Moreover, as this Court has cautioned, courts should be "especially reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 107–08 (4th Cir. 2006) (internal citations and quotation marks omitted). Holding otherwise would undermine ERISA's "carefully crafted and detailed enforcement scheme," (*Mertens*, 508 U.S. at 254), opening the floodgates for suits for compensatory damages following a plan's denial of benefits.[3]

---

[3] Rose also appears to argue that because ERISA does not specifically prohibit payment of benefits to a beneficiary's estate, she is somehow entitled to that relief. But Rose disregards the text of § 502(a)(1)(B), which permits "a participant or beneficiary . . . to recover benefits due to him *under the terms of his plan* [or] to enforce his rights *under the terms of the plan*." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Thus, ERISA limits the available benefits to those provided under the terms of the plan. Rose does not allege that the Plan's terms allow payment of the value of medical procedures never received.

19

## 2. Rose cannot seek a declaration to recover benefits.

Rose argues that, even if she cannot seek the monetary value of benefits, she can enforce Mr. Holman's rights under the plan and somehow recover the monetary value of benefits she claims were due to Mr. Holman. Rose's Br. at 32–33. That argument fails for at least two reasons.

*First*, an order to enforce the terms of the plan can only come through forward-looking declaratory or injunctive relief. But Rose lacks Article III standing to sue for declaratory or injunctive relief because any claim for prospective relief is moot. A claim for injunctive or declaratory relief under ERISA is moot when, as here, the plan member is deceased and the administratrix cannot benefit from a declaration of any defendant's obligations under the plan. *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 248–49 (3d Cir. 2002); *see also Peters v. Aetna, Inc.*, 2 F.4th 199, 221 n.11 (4th Cir. 2021) (former plan participants lack Article III standing for prospective injunctive relief). Because Mr. Holman has died, he can no longer benefit from any injunction or declaratory relief. Nor could Rose benefit from any prospective relief, so any claim for injunctive and declaratory relief is moot.

20

*Second*, as discussed above, Rose cannot recover the monetary value of benefits never received, regardless of the form of relief sought. *See, e.g.*, *Hamann*, 543 F. App'x at 357; *Cannon*, 77 F.3d at 1272; *Zavala*, 2006 WL 898019, at *5. Neither of the two recent out-of-circuit cases that Rose cites—*Heckman v. United Healthcare Ins. Co.*, No. 8:20-CV-39-T-60AEP, 2020 WL 4041081 (M.D. Fla. July 17, 2020), and *Tony M. v. United Healthcare Ins. Co.*, No. 2:19-CV-00165, 2019 WL 5066806 (D. Utah Oct. 9, 2019)—involved a plaintiff suing to recover the monetary value of benefits never received. Instead, those cases addressed whether a plan participant had standing to sue for reimbursement of out-of-pocket expenses the participant paid for a beneficiary's treatment, which is one of the two forms of relief available under § 502(a)(1)(B). *Heckman*, 2020 WL 4041081, at *3; *Tony M.*, 2019 WL 5066806, at *3. Neither *Heckman* nor *Tony M.* support Rose's claim for injunctive or declaratory relief.

### 3. No amount of fact finding could change the result.

Rose also asks the Court to reserve the issue to summary judgment, after the parties develop the record. Rose's Br. at 33–34. But Rose never explains how discovery could change the remedies available under ERISA. It cannot.

21

### b. The non-PSA Defendants are not proper defendants under § 502(a)(1)(B).

Rose's claims for benefits against UMR, Quantum, and MCMC also fail because they are not proper defendants under § 502(a)(1)(B). Section 502(a)(1)(B) authorizes recovery only for "benefits due . . . under the terms of [a participant's or beneficiary's] plan." 29 U.S.C. § 1132(a)(1)(B). But Rose alleges, and the plan documents confirm, that any benefits due "under the terms of the plan" would have come, if at all, from PSA, not from UMR, Quantum, or MCMC.

Rose concedes that "PSA is the Plan Administrator, as well as the Plan Sponsor" , that the Plan "is fully self-funded," that PSA "assumes the sole responsibility for funding the Plan benefits out of general assets," and that the Plan "is not financed by an insurance company." J.A. 13–14. These concessions are confirmed by the Plan documents that Rose attached to her motion-to-dismiss briefing. *See* Dkt. 58-2 at 5, No. 3:19-cv-695 (W.D.N.C. Apr. 8, 2021) (PSA "assumes the sole responsibility for funding the Plan out of general assets"); *id.* at 7 (PSA "will have full and sole discretionary authority to interpret all Plan documents, including this SPD, and make all interpretive and factual determinations as to whether any individual is entitled to receive any benefit under the terms

22

of this Plan.").  No such allegations of administrative control or funding are alleged against UMR, Quantum, or MCMC.

Although different circuits have established slightly different standards to determine who can be a proper defendant for a § 502(a)(1)(B) claim, UMR, Quantum, and MCMC are not proper defendants under any standard. They are not alleged to be the plan administrators, as required by some circuits. *See, e.g.*, *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) ("In a § [502](a)(1)(B) claim, the defendant is the plan itself (or plan administrators in their official capacities only.").  Nor are the non-PSA Defendants alleged to have any obligation to fund the Plan benefits, a standard espoused by other circuits. S*ee Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1088 (8th Cir. 2009).  And Rose never alleged (and never could) that UMR, Quantum, or MCMC controlled administration of the Plan—the standard that other circuits have applied in deciding whether a party is a proper defendant under § 502(a)(1)(B). *See Gómez-González v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st

23

Cir. 2010) ("[T]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan.").[4]

### c. MCMC cannot be liable under § 502(a)(1)(B) because Rose never alleges that MCMC denied any claim for benefits.

Rose also cannot recover against MCMC under § 502(a)(1)(B) because MCMC *never denied* the claim for benefits. Rose's § 502(a)(1)(B) claim against MCMC hinges on an allegation that "Defendants wrongfully withheld health benefits due and owing under the Plan." J.A. 27. But as Rose alleged, MCMC *approved* Mr. Holman's benefits claim, overturning the denial. J.A. 26. Accordingly, Rose cannot plausibly argue that she could be entitled to anything from MCMC for denial of benefits under § 502(a)(1)(B).

## II. THE DISTRICT COURT PROPERLY DISMISSED ROSE'S § 502(A)(3) CLAIMS.

Rose's claims for breach of fiduciary duty under § 502(a)(3) also failed at the threshold, for at least two reasons: (1) the relief she sought—payment for the monetary value of benefits never received—is legal

---

[4] This Court has not weighed in on the question, but it previously concluded in an unpublished decision that a trust was not a proper defendant under § 502(a)(1)(B) because it had "no control over [the] administration" of the plan. *See Gluth v. Wal-Mart Stores, Inc.*, 117 F.3d 1413 (Table), No. 96-1307, 1997 WL 368625, at *6 (4th Cir. July 3, 1997).

relief, not equitable relief; and (2) her "equitable" claims are repackaged benefit claims that § 502(a)(3) prohibits. The Court should also affirm the dismissal of Rose's § 502(a)(3) claim against the non-PSA Defendants because she did not plausibly allege either that UMR, Quantum, or MCMC holds any money or property rightfully belonging to the estate, or that UMR, Quantum, or MCMC breached any fiduciary duty.

### a. Through her claim for surcharge, Rose sought "compensatory damages," not equitable relief.

Make no mistake: Rose sought "compensatory damages" below, not equitable relief.

Several times in her opening brief, Rose admits that she asked for "monetary damages" in the form of "the full value of the heart transplant and any related services." *See* Rose's Br. at 14, 34–37, 50; *see also* J.A. 39 ("Plaintiff has suffered harm and damages, and is entitled to have judgment entered in her favor and against Defendants in an amount to be determined at trial."). No matter how she frames it, those are textbook claims for legal relief. In *Mertens*, the Supreme Court held that "[m]oney damages are, of course, the classic form of *legal* relief." 508 U.S. at 255. When a plaintiff seeks "nothing other than compensatory damages— monetary relief for all losses" stemming from the alleged breach of

25

fiduciary duty—the claim falls outside § 502(a)(3)'s scope. *Id.*; *see also Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (a judgment of liability merely "to pay a sum of money" is legal, not equitable, relief); *see also Damages*, Black's Law Dictionary (11th ed. 2019) (explaining that actual damages are "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses" and that compensatory damages are "[d]amages sufficient in amount to indemnify the injured person for the loss suffered").

Rose attempts to evade black letter law by casting her claims as seeking "surcharge" and arguing that the Supreme Court in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) erased the distinction between equitable and legal relief. Not so. After *Amara*, the Supreme Court confirmed that its "interpretation of 'equitable relief' in *Mertens*, *Great-West*, and *Sereboff*, remains unchanged." *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan,* 577 U.S. 136, 148 n.3 (2016). *Amara* cannot bear the weight that Rose places on it.

In any case, Rose's claim for "monetary damages" under the guise of "surcharge" fails. Surcharge is a form of "make-whole" relief for a

26

financial loss "or to prevent the trustee's unjust enrichment" (*Amara*, 563 U.S. at 441–42) that is designed to rectify *financial* harms. The equitable remedy of surcharge permits courts to put beneficiaries in the place they would have been "but for" the trustee's alleged breaches of fiduciary duty. *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012); *see also* Scott & Ascher, Trusts § 24.9 (6th ed., 2020 Cum. Supp. 2020) (pursuant to the surcharge remedy, "the trustee is liable for the amount required to restore the value of the trust estate and trust distributions to what they would have been if the trust had been properly administered"); Bogert's The Law of Trusts and Trustees § 862 ("Where a trustee is held liable for damages he is usually charged merely with the loss in the value of the trust estate.").

The Ninth Circuit rejected Rose's exact argument in *Zavala*, holding that the monetary value of benefits never received is compensatory, and thus legal, rather than equitable, relief. As described above, the plan participant in *Zavala* died before receiving healthcare benefits that were at first denied. 2006 WL 898019, at *1. The court held that the compensatory damages in the form of "the monetary value of the treatment for which benefits were denied" that the participant's estate

sought were not in the "make whole" category of equitable relief permitted under ERISA. *Id.* at *14-16. The Ninth Circuit upheld the district court's denial of the § 502(a)(3) claim because the "[p]laintiff's ERISA claims are compensatory, legal remedies that are not recoverable under ERISA . . . § 502(a)(3)." *Zavala*, 258 F. App'x at 158.

The same is true here. As the district court recognized, Rose "is not asking the Court to put her in the same position that she would have been in had the benefits been paid." J.A. 87. "Instead, she is seeking a monetary windfall that, in reality, could have never come to pass." *Id.* Rose did not seek to put herself or the estate in the place they would have been but-for the benefit decision, and she did not seek to rectify a financial harm. Instead, she sought compensatory damages. "Awarding [Rose] the monetary value of medical treatment that Mr. Holman did not receive—and cannot now receive—is not the type of 'make whole relief' authorized under the equitable remedy of surcharge." *Id.* While Mr. Holman may have been able to seek judicial intervention to force the Plan to pay benefits or else seek reimbursement for payment of the transplant, even he could have never received the monetary value of the transplant.

Rose's reliance on this Court's decisions in *McCravy* and *Peters* offer Rose no support. In *McCravy v. Metro Life Insurance Co.*, a participant sued a plan for denying life insurance benefits after her daughter's death because the daughter had aged out of dependent coverage. 690 F.3d 176, 178 (4th Cir. 2012). The participant could not recover the denied benefits under § 502(a)(1)(B) because, under the plan's terms, no benefits were due. *Id.* at 183 (describing the life insurance benefits as "non-existent"). But the plan had allegedly represented to the participant that her daughter remained eligible for coverage, and the plan continued accepting the participant's premium payments even after coverage supposedly ended. *Id.* at 178. Given those circumstances, this Court held that the participant could recover equitable relief under § 502(a)(3) in the form of the falsely promised insurance benefits. *Id.* at 183. And *Peters v. Aetna, Inc.*, 2 F.4th 199 (4th Cit. 2021), did not involve a claim related to a denial of benefits at all. Instead, the participant received the services in question but disputed the way in which her benefits were calculated. *Id.* at 212–13.

Neither *McCravy* nor *Peters* upended the Supreme Court's precedent that "legal remedies—even legal remedies that a court of

equity could sometimes award—are not 'equitable relief' under § 502(a)(3)." *Montanile*, 577 U.S. at 148–49; *see also Russell*, 473 U.S. at 148 ("Congress did not provide, and did not intend the judiciary to imply, a cause of action for extracontractual damages caused by improper or untimely processing of benefit claims."); *Powell v. Chesapeake & Potomac Tel. Co. of Va.*, 780 F.2d 419, 424 (4th Cir. 1985) (ERISA does not authorize damages, including for physical ailments, emotional distress, and deterioration of mental health.). Calling claims for damages "surcharge" does not transform a legal remedy into equitable relief.

### b. Rose does not qualify for other forms of equitable relief under § 502(a)(3).

As the district court correctly recognized, "'surcharge' is not simply the moniker given to any monetary payment of an equitable harm—if it were, then there would be no need for other equitable remedies, such as restitution, equitable estoppel, or a constructive trust." J.A. 86 (citing *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 893 (7th Cir. 2013) (Manion, J., concurring)). But Rose cannot recover "monetary damages" under those forms of relief—or any other that she raised—either:

1. *Disgorgement and constructive trust.* Rose cannot receive disgorgement of profits—or a constructive trust on some hypothetical pot

30

of profits. Like restitution, disgorgement "restore[s] the status quo." *Liu v. SEC*, 140 S. Ct. 1936, 1943 (2020). But disgorgement cannot restore any financial status quo because Rose did not allege any financial loss or gain. As the district court recognized, awarding Rose the monetary value of medical treatment that was never provided would be a "windfall." J.A. 87.

2.    *Equitable estoppel*. Rose also argues that she is entitled to the value of the benefits not received by way of equitable estoppel. Rose's Br. at 55–57. Rose recognizes that equitable estoppel is intended to remedy only an "affirmative misrepresentation." *Id.* at 56; *see also Amara*, 563 U.S. at 441 ("Equitable estoppel 'operates to place the person entitled to its benefit in the same position he would have been in had the representations been true.'"). But Rose never alleged any misrepresentation by any Defendant below. Nor did she allege that she (or Mr. Holman) was ever misled. Her argument that the Defendants misled Mr. Holman or misrepresented the terms of the Plan—raised for the first time on appeal—cannot amend the language of the amended complaint.

31

3. *Restitution*. Restitution seeks to "restore to the plaintiff particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 214. The essence of restitution is "the reversal of a transfer" to prevent unjust enrichment. Restatement (Third) of Restitution and Unjust Enrichment § 1 (Am. L. Inst. 2011). Rose sought to recover through restitution "potentially millions of dollars for [the participant's] heart transplant and related medical care" (J.A. at 53), but neither she nor the participant transferred millions of dollars to Defendants. Rose's claim that "financial injury in the form of the monetary cost of a wrongfully denied substantial medical procedure . . . was certainly incurred" is wrong. *See* Rose's Br. 57. No procedure was performed, so no cost was incurred. Restitution therefore is not an available remedy, and neither is unjust enrichment—which is synonymous with restitution. *ConFold Pac., Inc. v. Polaris Indus., Inc.*, 433 F.3d 952, 957 (7th Cir. 2006).

4. *Declaratory, injunctive, and other equitable relief*. As explained above, Rose lacks Article III standing to sue for declaratory or injunctive relief because any claim for forward-looking relief is moot. But even if Rose could obtain forward-looking relief under § 502(a)(3), Rose

32

waived any right to appeal the dismissal of her claim for injunctive relief. Rose did not object to that portion of the magistrate judge's order. *See* J.A. 74 (finding that Rose's claims for injunctive and declaratory relief were moot); *see generally* Dkt. 68, No. 3:19-cv-695 (W.D.N.C. Apr. 8, 2021). "A plaintiff is 'deemed to have waived an objection to a magistrate judge's report if [he] do[es] not present [his] claims to the district court.'" *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) (alterations in original) (quoting *United States v. Benton*, 523 F.3d 424, 428 (4th Cir. 2008)).

### c.    Section 502(a)(3) does not authorize benefit claims by another name.

Rose cannot recover under § 502(a)(1)(B) the monetary value of benefits never received, and she cannot avoid that outcome by cloaking her request for money damages as one for "equitable" relief under § 502(a)(3). Defendants do not argue that a plaintiff can never plead a § 502(a)(3) claim alongside a § 502(a)(1)(B) claim. But what Rose sought here—the value of medical benefits under the Plan's terms—is only available under § 502(a)(1)(B). As the Supreme Court has recognized, equitable relief under § 502(a)(3) is unavailable "where Congress elsewhere provided adequate relief for a beneficiary's injury." *Varity Corp. v. Howe,* 516 U.S. 489, 515 (1996). Following *Varity,* this Court has

33

repeatedly held that "a cause of action under § [502](a)(3) is . . . not appropriate" when a plaintiff seeks "review of a benefits determination." *Korotynska*, 474 F.3d at 107.[5]

No matter how Rose phrases it, the relief sought is the same under both claims: "the full value of the heart transplant and any related services" due under the Plan. *Compare* J.A. 31 (relief sought under § 502(a)(1)(B)), *with* J.A. 39 (relief sought under § 502(a)(3)). That relief is identical to the monetary relief that the plaintiff sought in *Korotynska*. *See* 474 F.3d at 105 (holding that there was "no question" that plaintiff seeking to recover for "financial harm" resulting from "termination of benefits" was effectively "pressing . . . a claim for individual benefits"). As in *Korotynska*, the only "equitable relief" that Rose sought was "pursued

---

[5] *See also Savani v. Wash. Safety Mgmt. Sols., LLC*, 474 F. App'x 310, 313 n.2 (4th Cir. 2012) (per curiam) (district court "properly dismissed" a claim "on the grounds that a party may not request simultaneous relief under both ERISA § 502(a)(1)(B) and § 502(a)(3)"); *Estate of Spinner v. Anthem Health Plans of Va., Inc.*, 388 F. App'x 275, 282 (4th Cir. 2010) ("Because subsection (a)(3) provides equitable relief, it is not the appropriate vehicle through which to redress wrongful denial of benefits."); *Coyne & Delany Co. v. Blue Cross & Blue Shield*, 102 F.3d 712, 715 (4th Cir. 1996) ("Section 502(a)(3) provides relief apart from an award of benefits due under the terms of a plan. When a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § 502(a)(1)(B).") (quotation omitted).

with the ultimate aim of securing the remedies afforded by § [502](a)(1)(B)." *See id.* at 107–08.

Rose is mistaken in arguing that neither *Varity* nor *Korotynska* bars her § 502(a)(3) claims. Rose's Br. at 16. *First*, Rose argues that because the district court "did not address th[o]se cases," the district court "presumably uph[eld] the Magistrate's finding" that the they do not bar recovery. *Id.* But, reviewing the magistrate's recommendations *de novo*, the district court "reject[ed]" the magistrate judge's conclusions about Rose's § 502(a)(3) claims for monetary relief, explaining that the magistrate's conclusions were "in error." J.A. 84. Although the district court dismissed Rose's claims on other grounds, this Court can affirm for any reason—including finding that her § 502(a)(3) claims improperly sought a benefits determination. *See, e.g.*, *McMahan v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 964 F.2d 1462, 1467 (4th Cir. 1992) ("We of course have the power to affirm a judgment for any reason appearing on the record, notwithstanding that the reason was not addressed below.").

*Second*, Rose argues that the Supreme Court's decision in *Amara* abrogated *Korotynska*. Rose's Br. 18–19. She is wrong. To begin with, the

Supreme Court has held that *Amara*'s discussion of § 502(a)(3) was "not essential to resolving that case" and that the Court's longstanding interpretation of equitable relief under § 502(a)(3) "remains unchanged." *Montanile*, 577 U.S. at 148 n.3.

In any event, nothing in *Amara* suggests that the Supreme Court overturned *Varity*. This Court—and district courts in this Circuit—have continued to rely on *Varity* and *Korotynska* after *Amara. See, e.g.*, *Savani*, 474 F. App'x at 313 n.2.[6] Likewise, in *Rochow v. Life Insurance Co. of North America*, a case decided after *Amara*, the Sixth Circuit affirmed *Varity's* core holding:

> A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the

---

[6] *See also Archer v. SunTrust Bank*, No. 3:17-cv-616, 2017 WL 6550390, at *2 (E.D. Va. Dec. 22, 2017) ("*Amara* [has] no bearing here, as [it does] not alter the rule in *Varity* and *Korotynska*"); *Chavis v. Plumbers & Steamfitters Local 486 Pension Plan*, No. ELH-17-2729, 2018 WL 4052182, at *13–14 (D. Md. Aug. 23, 2018) (dismissing § 502(a)(3) claims because "the claims for relief are a mere 'repackaging' of the relief already requested by plaintiffs" under §§ 502(a)(1)(B) and 502(a)(2)); *Campbell v. Rite Aid Corp.*, No. 7:13-cv-02638, 2014 WL 3868008, at *4 (D.S.C. Aug. 5, 2014) ("*Amara* does not alter the rule set down in *Varity* that equitable remedies are only available when adequate relief is not available elsewhere."); *Leach v. Aetna Life Ins. Co.*, No. WMN-13-2757, 2014 WL 470064, at *4 (D. Md. Feb. 5, 2014) (same).

remedy afforded by Congress under § 502(a)(1)(B) is
otherwise shown to be inadequate.

780 F.3d 364, 372 (6th Cir. 2015).

Like the plaintiff in *Rochow*, Rose mistakes a remedy that is
*adequate* for one that is *viable*. As discussed above, Holman could have
pursued two remedies under § 502(a)(1)(B) but chose neither. This failure
does not open the door to do-over claims under § 502(a)(3). *See Rochow*,
780 F.3d at 375 (equitable relief is unavailable "by repackaging the
wrongful denial of benefits claim as a breach-of-fiduciary-duty claim").

Rose's cited cases offer no help. In *Silva v. Metropolitan Life
Insurance Co.*, the Eighth Circuit authorized a § 502(a)(3) claim to
proceed alongside a § 502(a)(1)(B) claim for benefits owed to the named
beneficiary of a life insurance policy because the § 502(a)(3) claims
stemmed from "different theories of liability." 762 F.3d 711, 728 (8th Cir.
2014).[7] In *Moyle v. Liberty Mutual Retirement Benefit Plan*, the Ninth

---

[7] The plaintiff in *Silva* alleged injuries separate from the denial of
benefits: (1) under a surcharge theory, the plaintiff alleged that the
fiduciary failed to provide an adequate summary plan description to plan
members, (2) under a reformation theory, the plaintiff alleged that the
plan fraudulently collected premiums from an employee that the
defendants argued lacked an approved policy, and (3) under an estoppel
theory, the plaintiff alleged that the decedent relied on the plan's

37

Circuit similarly allowed a § 502(a)(3) claim to proceed given separate allegations about the defendant's "material lack of disclosure about the terms of a pension plan." 823 F.3d 948, 960 (9th Cir. 2016). And in *Christine S. v. Blue Cross Blue Shield of New Mexico*—the case Rose claims "offers the most comprehensive analysis of this issue" (Rose's Br. at 26 n.5)—the court allowed simultaneous claims under §§ 502(a)(1)(B) and 502(a)(3) because the plaintiffs sought to "rectify two independent *injuries*—the wrongful denial of benefits . . . and being subjected to a Plan that fails to comply with their statutory Parity Act rights." 428 F. Supp. 3d 1209, 1231 (D. Utah 2019) (emphasis added).

Rose, in contrast, alleged one theory of liability (denial of benefits) and one "injury" (the monetary value of the heart transplant). Her sole claimed injury was the alleged improper denial of the heart transplant and related treatment and services. J.A. 31, 39. None of the cited cases speaks to the issue.

The bottom line is: "where it is clear that a party has simply 'repackaged' a § 502(a)(1)(B) claim for the wrongful denial of benefits and

_____

collection of his premium payments as proof that he had a valid policy. *Id.* at 720–24.

placed a § 502(a)(3) bow on top, dismissal is warranted." *Campbell*, 2014 WL 3868008, at *4.

### d. Rose cannot obtain § 502(a)(3) relief from the non-PSA Defendants.

The relief Rose sought is not equitable and therefore not available under § 502(a)(3). But even if it were, Rose's claims would still fail against UMR, Quantum, and MCMC because there is no "equitable" relief available against those parties under § 502(a)(3)—for at least two reasons.

*First*, Rose's unjust-enrichment theory contradicts her own allegations that PSA alone was responsible for paying benefits. Rose sought to recover the "gains [Defendants] obtained" in retaining the value of the denied heart transplant. Rose's Br. at 44. But Rose has not (and cannot) plausibly allege that UMR, Quantum, or MCMC unlawfully or inequitably retained any property. The magistrate judge recognized as much. *See* J.A. 77 (recommending that Rose's unjust enrichment theory proceed against the Plan alone because the benefits payment would come from the Plan's "pool of assets"). Rose cannot now amend her complaint on appeal by arguing that "[d]iscovery is needed to ascertain the exact

39

total of Defendants' substantial cost savings" (Rose's Br. at 45) when she never alleged any gain or savings by UMR, Quantum, or MCMC.

*Second*, because PSA funded the Plan, Rose cannot point to any funds in UMR's, Quantum's, or MCMC's possession that belong to the estate. A claim for equitable restitution—whether called "disgorgement" (*id.* at 51), a "constructive trust" (*id.* at 54), or "restitution" (*id.* at 57)— is possible only "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 213–14 & n.2; *see also Thorn v. Jefferson-Pilot Life Ins.*, 445 F.3d 311, 332 (4th Cir. 2006). Equitable monetary relief cannot run against a defendant's general assets. *Montanile*, 577 U.S. at 145; *see also Sereboff v. Mid-Atlantic Med. Serv.,* 547 U.S. 356, 362–63 (2006). "For restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 214.

Rose did not seek "particular funds" held by UMR, Quantum, or MCMC that "in good conscience" belong to Mr. Holman's estate. Instead, she claimed that the estate is "contractually entitled to *some* funds for

40

benefits." *See Knudson*, 534 U.S. at 214. That type of relief is unavailable under § 502(a)(3). *Id.*

### e. Rose has not plausibly alleged that MCMC, UMR, or Quantum were fiduciaries or breached any alleged fiduciary duty.

This Court should also affirm the district court's dismissal of Rose's claims for breach of fiduciary duty under § 502(a)(3) against MCMC, UMR, and Quantum because Rose did not allege that MCMC, UMR, or Quantum was a fiduciary or breached any duty.

### 1. Rose failed to allege that MCMC, UMR, or Quantum were fiduciaries for the challenged conduct.

The threshold question "[i]n every case charging breach of ERISA fiduciary duty [is] whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). ERISA defines a fiduciary as someone who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . [or] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C.

41

§ 1002(21)(A). Vague allegations of "discretionary authority, control, and responsibility over the management of the Fund and certain assets of the Fund," are insufficient to plausibly allege fiduciary status. *Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996); *see also Moon v. BMX Techs, Inc.*, 577 F. App'x 224, 229 (4th Cir. 2014) (accepting premium payments and failing to notify participant of loss of eligibility were not "discretionary functions with respect to the management, assets, or administration of the plan").

Rose has not plausibly alleged facts showing that MCMC, UMR, or Quantum exercised any authority and control over the Plan.

Rose's only "allegation" about MCMC's fiduciary status amounts to *a single conclusory* statement lumping all Defendants together: "Defendants were both named and functional fiduciaries of the Plan." J.A. 32. A plaintiff "cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group." *See SD3, LLC*, 801 F.3d at 422. Instead, "the complaint must forecast that factual showing [which would be required at trial], and if it fails to allege particular facts against a particular defendant, then the defendant must be dismissed." *Id.*

42

In any event, Rose's allegations defeat the possibility that MCMC could be a fiduciary. Rose alleged that PSA hired MCMC for a discrete task: "to provide external review services for the claim at issue in this lawsuit." J.A. at 15. Under the governing regulations set forth in 45 C.F.R. § 147.136, an external reviewer conducts independent external reviews of final adverse benefit determinations by the plan pursuant to the regulations and bears no responsibility for or authority over plan management or administration. *See*, *e.g.*, 45 C.F.R. §§ 147.136(a)(2)(ii)(B) & (vii)(c–d). The only "wrongdoing" that Rose alleges by MCMC is an alleged failure to expedite external review, s*ee* J.A. 38 (the only "wrongdoing alleged herein with respect to Defendant MCMC [] pertain[s] to the handling, timing, and processing of the external review"), which, by law, was not MCMC's decision to make.[8]

---

[8] It is the group health plan or health insurance issuer's (*i.e.*, the Plan's) responsibility to decide whether to expedite an external review, not the independent external review ("IRO"). 45 C.F.R. § 147.136(d)(3). Moreover, at least one court has concluded that IROs are not functional fiduciaries when conducting their external review. *Herzfeld v. Teva Pharm. USA, Inc. Omnibus Welfare Plan*, No. 218CV09784ODWSSX, 2019 WL 8647729, at *6 (C.D. Cal. Aug. 26, 2019), *reconsideration denied sub nom. Herzfeld v. Teva Pharm. USA, Inc.*, No. 218CV09784ODWSSX, 2020 WL 1864852 (C.D. Cal. Apr. 14, 2020).

Rose's allegations with respect to Quantum and UMR fare no better. Rose claimed that each (1) "provide[d] claims administrative services" for the Plan (2) made "claim payments" from the Plan's funds, and (3) served as a named "claims appeal fiduciary." J.A. 14–15. None of those allegations plausibly suggests that Quantum or UMR "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 226.

Interpreting ERISA, the Department of Labor has explained that a "person who performs purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary." 29 C.F.R. § 2509.75-8 D-2. And this Court has held that providing general administrative services or processing claims under the terms of a health plan does not make a party a fiduciary. *See HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996) ("Given Aetna's limited role in processing claims under the Plan and reading a computer screen to determine who is and who is not covered, it is clear that Aetna is not a fiduciary under the Plan.").

44

Although Rose also alleged that UMR and Quantum were named "claims appeal fiduciar[ies] for medical claims" (J.A. 14), she never alleged what role (if any) UMR or Quantum played in the challenged conduct. "[B]eing a fiduciary under ERISA is not an all-or-nothing situation. Rather, the inquiry must be examined 'with respect to the particular activity at issue.'" *Gordon v. CIGNA Corp.*, 890 F.3d 463, 474 (4th Cir. 2018); *see also Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992) ("[T]he inclusion of the phrase 'to the extent' in [29 U.S.C.] § 1002(21)(A) means that a party is a fiduciary only as to the activities which bring the person within the definition."). Rose's "naked assertion" of UMR's and Quantum's purported fiduciary statuses falls short of ERISA's definition and fails Rule 8's pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555.

In short, Rose failed to allege that MCMC, Quantum, or UMR exercised any discretionary control over the Plan with respect to the challenged conduct. *See Pegram*, 530 U.S. at 226.

45

## 2. Rose failed to allege that MCMC, UMR, or Quantum breached any duty.

Rose also failed to allege plausible facts suggesting that MCMC, UMR, or Quantum breached any alleged fiduciary duty that caused the alleged injuries. *See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 720 (2d Cir. 2013) (a plaintiff must allege facts "showing that a prudent fiduciary in like circumstances would have acted differently").

*First*, Rose's allegations reveal that MCMC committed no breach. The only "wrongdoing" that Rose alleges by MCMC is its alleged failure to expedite external review, (J.A. 38), which, as noted above, was never MCMC's responsibility by law. 45 C.F.R. § 147.136(d)(3). What's more, Rose conceded that MCMC ultimately *approved* Mr. Holman's claim. J.A. at 26. Rose, therefore, has alleged facts that defeat the possibility that MCMC breached any illusory fiduciary duty.

*Second*, Rose never alleged plausible facts suggesting that UMR or Quantum breached a fiduciary duty—whether through claims processing, the administrative-appeal process, or otherwise—that caused the alleged injuries. Rose did not plead facts differentiating either UMR's or Quantum's challenged conduct from the other Defendants or providing

UMR or Quantum notice of what either supposedly did wrong. *See* J.A. 127–28, 136. And even then, Rose acknowledged that the administrative process ultimately led to a benefits approval. J.A. 26. There is no plausible allegation of fiduciary breach or causation. J.A. 127–28, 136.

**<u>CONCLUSION</u>**

For all of these reasons as well as any other reason that appears in the record, the Court should affirm the district court's judgment.

Dated: April 7, 2022

/s/ *Ross P. McSweeney*
Edward J. Meehan
Ross P. McSweeney
GROOM LAW GROUP
1701 Pennsylvania Avenue, NW
Washington, D.C. 20006
Phone: (202) 861-6625
Fax: (202) 659-4503
emeehan@groom.com
rmcsweeney@groom.com

*Counsel for Defendants-Appellees*
*PSA Airlines, Inc., and PSA*
*Airlines, Inc., Group Benefit Plan*

/s/ *Rachel A. Smoot*
Rachel A. Smoot
TAFT STETTINIUS &
HOLLISTER, LLP
Suite 1000
65 East State Street
Columbus, OH 43215
Phone: (614) 220-0227
Fax: (614) 221-2007
rsmoot@taftlaw.com

*Counsel for Defendant-Appellee*
*Quantum Health, Inc., a/k/a*
*MyQHealth by Quantum*

/s/ *Brian D. Boone*
Brian D. Boone
Brandon C.E. Springer
ALSTON & BIRD LLP
101 South Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Phone: (704) 444-1000
Fax: (704) 444-1111
brian.boone@alston.com
brandon.springer@alston.com

*Counsel for Defendant-Appellee*
*UMR, Inc.*

/s/ *Victoria T. Kepes*
Victoria T. Kepes
Alfred Victor Rawl, Jr.
GORDON REES SCULLY
MANSUKHANI, LLP
Suite 350
40 Calhoun Street
Charleston, SC 29401
Phone: (843) 714-2505
Fax: (843) 804-4691
vkepes@grsm.com
vrawl@grsm.com

*Counsel for Defendant-Appellee*
*MCMC, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   [X] this brief contains 9,672 words.

   [ ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:

   [X] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2016*] in [*14pt Century School Book*]; or

   [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

*/s/ Edward J. Meehan*
Edward J. Meehan
Ross P. McSweeney
Groom Law Group, Chartered
1701 Pennsylvania Ave, N.W.
Washington, D.C. 20006
(202) 857-0620
emeehan@groom.com
rmcsweeney@groom.com

*Attorney for PSA Defendants-Appellees*
